FILED

SEP 25 2012

United States Bankruptcy Court
San Jose, California

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re | ] | Case No. 11-53414-ASW |
| | ] | |
| MAURICE EUGENE RUGRODEN, | ] | Chapter 13 |
| | ] | |
| Debtor. | ] | |
| | ] | |

**MEMORANDUM DECISION DENYING MOTION FOR SANCTIONS AND
DENYING MOTION FOR RELIEF FROM STAY, AS MOOT**

This matter comes before the Court on two related motions.
Debtor Maurice Eugene Rugroden ("Rugroden"), through counsel
Stanley Zlotoff, has filed a Motion for Sanctions for Violation of
the Automatic Stay ("Motion for Sanctions"), seeking attorney's
fees, actual damages, and punitive damages from the Internal
Revenue Service ("IRS") and Scott Harvey ("Harvey"). The IRS,
which is represented by Special Assistant United States Attorney
John Strate, filed a written opposition to the Motion for Sanctions
as well as a separate Motion for Relief from the Automatic Stay
Nunc Pro Tunc ("Motion for Relief from Stay"). Harvey, who is
represented by attorney Peter Leeson, filed a written opposition to
the Motion for Sanctions. The parties have also filed supplemental
briefs.

The Court held non-evidentiary hearings on the Motion for Sanctions and on the Motion for Relief from Stay. The Court has had an opportunity to consider everything the parties have filed, as well as all of the arguments presented at the hearings. For the reasons set forth below, the Court denies the Motion for Sanctions and denies the Motion for Relief from Stay, as moot.

## I. Facts

The material facts are undisputed. Rugroden was the record owner of two parcels of real property. One parcel is located at 5842 Dodowah Road in Carnelian Bay, California (hereafter, this parcel is referred to as "Carnelian Bay"). The other parcel is located at 21015 Hemlock Street in Groveland, California (hereafter, this parcel is referred to as "Groveland").[1] According to Rugroden's brief, neither of the Properties is Rugroden's principal residence.

On June 10, 2010, the IRS seized both Properties for nonpayment of income taxes. On October 21, 2010, the IRS sold Carnelian Bay to Harvey for $70,672.74 and issued Harvey a certificate of sale the next day.[2] On November 30, 2010, the IRS sold Groveland to Harvey for $104,000.00 and issued Harvey a certificate of sale the same day. Harvey took possession of

---

[1] Whenever practical, the Court will collectively refer to the two properties as "the Properties."

[2] The declaration of Rugroden's attorney states that the sales of both Properties occurred on September 21, 2010. However, the certificates of sale attached to counsel's declaration show otherwise. The Court has used the dates reflected on the certificates of sale.

Carnelian Bay in November 2010, and Harvey took possession of Groveland in December 2010.

After the sales, Rugroden possessed a 180-day statutory right to redeem each of the Properties under the Internal Revenue Code, 26 U.S.C. § 6337. For Carnelian Bay, the period of redemption ran from October 21, 2010 through April 19, 2011. For Groveland, the period of redemption ran from November 30, 2010 through May 29, 2011.

Before the 180-day period expired for either of the Properties, Rugroden filed a bankruptcy petition on April 12, 2011. On April 12, 2011, Rugroden sent a fax notifying Jules Tupaj, who is an Insolvency Advisor for the IRS, of the commencement of the bankruptcy case and the existence of an automatic stay. There is no evidence that Rugroden gave notice of the bankruptcy to Harvey before the deeds were executed, but Harvey at some later point in time learned of the bankruptcy case.

On June 15, 2011, the IRS issued deeds to Harvey for the Properties without first obtaining relief from the automatic stay in Rugroden's bankruptcy case. Both deeds were executed by R.A. Mitchell, Director of Advisory, Insolvency, and Quality for the IRS.

In a July 27, 2011 letter to Mr. Tupaj of the IRS and Harvey's attorney, counsel for Rugroden stated that the issuance of the deeds violated the automatic stay in Rugroden's bankruptcy case and that the deeds were void. Counsel for Rugroden also demanded that the IRS cancel the deeds issued to Harvey and that Harvey relinquish ownership of the Properties. Both the IRS and Harvey have refused to undo the transfers of the Properties. On January

1  11, 2012, the IRS filed a motion seeking retroactive relief from
2  the automatic stay.

## II. Issues Presented

5  Rugroden moves for attorney's fees, actual damages, and
6  punitive damages under 11 U.S.C. § 362(k) for allegedly willful
7  violations of the automatic stay by the IRS and Harvey premised
8  upon the issuance of the deeds on June 15, 2011, and Harvey's
9  refusal to return the Properties. Rugroden contends that after the
10 sale of each of the Properties, Rugroden possessed a statutory
11 right of redemption for a period of 180 days, as well as title to
12 both Properties. Rugroden further asserts that each right of
13 redemption was property of the bankruptcy estate and was tolled by
14 the automatic stay and by Rugroden's statutory right to redeem the
15 Properties through his Chapter 13 plan. According to Rugroden, the
16 IRS's issuance of the deeds to Harvey on June 15, 2011, and
17 Harvey's retention of the Properties thereafter, were violations of
18 the stay.

19  The IRS responds that the IRS was authorized to seize and sell
20 the Properties because Rugroden failed to pay income taxes and the
21 seizure and sale occurred before Rugroden filed a bankruptcy
22 petition.[3] Both the IRS and Harvey contend that the issuance of
23 the deeds on June 15, 2011 did not violate the automatic stay,
24 because issuance of the deeds was a non-discretionary, ministerial
25 task under 26 U.S.C. § 6338(b), and because the statutory

27  [3] Rugroden does not challenge the IRS's authority to seize and
    sell the Properties pre-petition. Rugroden also does not claim any
28  irregularities with either sale, nor does Rugroden claim that
    Harvey lacks status as a bona fide purchaser of the Properties.

redemption period had expired.  The IRS and Harvey further assert
that the statutory redemption period set forth in 26 U.S.C. § 6337
was not tolled by 11 U.S.C. §§ 362 or 1322, and that any redemption
period expired 60 days after the filing of the bankruptcy petition
in accordance with 11 U.S.C. § 108, before the IRS issued the
deeds.  According to the IRS and Harvey, any right of redemption
passed out of the bankruptcy estate before the IRS issued the
deeds, and as a result, there was no violation of the automatic
stay.  Harvey also argues that despite having knowledge of the
bankruptcy proceeding, Harvey never received proper notice of the
bankruptcy proceeding.  Finally, the IRS asserts that no punitive
damages can be obtained against the IRS under 11 U.S.C.
§ 106(a)(3).[4]

From the parties' respective arguments, the Court has
discerned several salient issues.  The Court must first determine
the nature of any property interest which Rugroden possessed after
the IRS sold both Properties -- specifically, whether Rugroden held
a property interest in the Properties, themselves, or whether
Rugroden's property interest was limited to a right of redemption.
The next issue is whether Rugroden's right of redemption was stayed
by the bankruptcy case, and if so, under which statute and for how

---

[4] Harvey also argues that any request for damages under 11
U.S.C. § 362(k) must be sought in an adversary proceeding under
Fed. R. Bankr. P. 7001.  Rugroden disputes this argument, and has
provided contrary authority.  See In re Zumbrun, 88 B.R. 250, 252-
53 (B.A.P. 9th Cir. 1988); see also In re Williams, 323 B.R. 691,
702 (B.A.P. 9th Cir. 2005) (Rule 7001 requires an adversary
proceeding if a finding of contempt is sought, otherwise relief by
motion is proper).  Both Zumbrun and Williams support Rugroden's
position, and the Court concludes that the request for damages has
been properly presented.  In addition, the parties have had a full
opportunity to brief all of the legal issues raised in the Motion
for Sanctions.

1 long.  Relatedly, the Court must also determine whether the

2 issuance of the deeds by the IRS on June 15, 2011 deprived

3 Rugroden's estate of any property interest in violation of the

4 automatic stay.  If there was such a deprivation, the Court must

5 then determine whether the IRS or Harvey willfully violated the

6 automatic stay, and if so, what sanctions to award for such

7 violation under 11 U.S.C. § 362(k).  Finally, the Court must

8 determine whether to grant the IRS nunc pro tunc relief from stay.

9

### III. Analysis

#### A. Property of the Estate

12 Under 11 U.S.C. § 541(a)(1), a bankruptcy estate consists of

13 all property of the debtor, including all legal or equitable

14 interests of the debtor in property when the bankruptcy case

15 commences.  Therefore, the Court must first determine the nature of

16 Rugroden's property interest, or interests, at the time when

17 Rugroden filed his bankruptcy petition.

18 The Court first considers the effect of the IRS's pre-petition

19 sales of the Properties on Rugroden's interest in the Properties.

20 The IRS may levy upon real property belonging to a taxpayer who has

21 failed to pay income taxes, "after notice and demand."  26 U.S.C.

22 § 1331.  After the IRS seizes the property, the IRS may then sell

23 the property in accordance with 26 U.S.C. § 6335.  Sale is to the

24 highest bidder at auction, and if there is an offer equivalent to,

25 or greater than, the minimum bid, "the property shall be declared

26 sold to the highest bidder."  26 U.S.C. § 6335(e)(B).  Once the

27 purchaser pays the purchase price in full, then the IRS is required

28 to give the purchaser a certificate of sale.  26 U.S.C. § 6338(a).

Any time before the sale, the person whose property has been levied upon has the right to pay the amount of taxes due, along with expenses of any proceeding, and the property will be restored to such person. 26 U.S.C. § 6337(a). However, after the sale takes place, "[t]he owners of any real property sold . . . shall be permitted to redeem the property sold . . . at any time within 180 days after the sale thereof." 26 U.S.C. § 6337(b)(1). To redeem the property, the person whose property was levied upon must pay the purchaser the amount paid by the purchaser, plus interest at the rate of 20% per annum. 26 U.S.C. § 6337(b)(2). Under 26 U.S.C. § 6338(b), if the property is not redeemed:

> in the manner and within the time provided in section 6337, the Secretary shall execute (in accordance with the laws of the State in which such real property is situated pertaining to sales of real property under execution) to the purchaser of such real property at such sale, upon his surrender of the certificate of sale, a deed of the real property so purchased by him[.][5]

Under the Internal Revenue Code, the certificate of sale has different effects, depending on whether the sale is of real or personal property. With sales of real property, the certificate of sale does not transfer title.[6] Rather, under 26 U.S.C. § 6339(b)(2), it is the deed which operates to convey "all the right, title, and interest the party delinquent had in and to the real property thus sold at the time the lien of the United States attached thereto."

_____

[5] Under 26 C.F.R. § 301.6338-1(b), this duty has been delegated to the district director.

[6] See 26 U.S.C. § 6339(a) (explaining the significance of the certificate of sale for non-real property sales).

1    In support of the position that Rugroden did not retain title

2    to the Properties and that Harvey became the owner of the

3    Properties at the time of each sale, Harvey cites to dicta from

4    United States v. Whiting Pools, Inc., 462 U.S. 198, 211 (1983),

5    which states that "[o]wnership of the property is transferred only

6    when the property is sold to a bona fide purchaser at a tax sale."

7    However, for this proposition, the Supreme Court cited

8    § 6339(a)(2), which deals with sales of non-real property.  The

9    Whiting Pools case also dealt with the seizure of personal

10   property, not real property, and is not instructive in this regard.

11       After the IRS sold the Properties on October 21, 2010 and

12   November 30, 2010, respectively, Rugroden unquestionably possessed

13   a statutory right of redemption under 26 U.S.C. § 6337.  In

14   addition, pursuant to the plain language of 26 U.S.C. § 6339(b)(2),

15   Rugroden retained title to the Properties until the deeds were

16   executed.  Compare Hollar v. Myers (In re Hollar), 184 B.R. 243,

17   252-53 (Bankr. M.D.N.C. 1995) (expiration of the redemption period

18   extinguished the debtors' rights in the real property).

19   Consequently, Rugroden had an ownership interest in both Properties

20   when Rugroden filed the bankruptcy petition, and this ownership

21   interest became property of Rugroden's bankruptcy estate.[7]

22   Therefore, in analyzing whether issuance of the deeds violated the

23   automatic stay, the Court must consider both property interests.

24   
25       [7] One treatise suggests that the real property, itself, is not
     an asset of the estate, but offers no explanation for this
26   conclusion.  4 Collier on Bankruptcy ¶ 541.04[2] (16th ed. 2012).
     Another treatise instructs bankruptcy courts to look at non-
27   bankruptcy law to determine whether the debtor has an interest in
     real property.  Norton Bankruptcy Law and Practice, § 61:5 at 61-18
28   (3d ed. 2012).

## B. Alleged Violation of the Automatic Stay

The filing of a bankruptcy petition operates as a stay of any act to obtain possession of, or to enforce a lien against, property belonging to the debtor's estate. 11 U.S.C. § 362(a). The stay continues until such property is no longer property of the estate. 11 U.S.C. § 362(c)(1). Acts taken in violation of this stay are void. See Schwartz v. United States (In re Schwartz), 954 F.2d 569, 571 (9th Cir. 1992).

A unique situation occurs when a bankruptcy petition is filed after the sale of real property but during a debtor's statutory redemption period. With varying results, several courts have addressed whether a redemption period is stayed by the Bankruptcy Code, specifically 11 U.S.C. §§ 362(a) or 108(b), or whether bankruptcy courts have an equitable power under 11 U.S.C. § 105 to suspend the running of any redemption period. See In re Farmer, 81 B.R. 857 (Bankr. E.D. Pa. 1988); Johnson v. First Nat. Bank of Montevideo, Minn., 719 F.2d 270 (8th Cir. 1983); Martinson v. First National Bank of Oakes (In re Martinson), 26 B.R. 648 (D.N.D. 1983), reversed in part, 731 F.2d 543 (8th Cir. 1984); Heikkila v. Carver (In re Carver), 828 F.2d 463 (8th Cir. 1987); Multnomah County v. Rudolph (In re Rudolph), 166 B.R. 440 (D. Or. 1994).[8]

---

[8] With regard to § 105 as a source of authority for tolling the redemption period, courts generally have rejected any such argument. The Eighth Circuit stated in Johnson, 719 F.2d at 274, that § 105(a) could not be invoked to toll a redemption period "absent fraud, mistake, accident, or erroneous conduct on the part of the foreclosing officer." Similarly, in Farmer, the bankruptcy court found no compelling circumstances -- such as fraud, mistake, or erroneous conduct -- to support equitable tolling. 81 B.R. at 862. Rugroden does not allege any fraud, mistake, accident, or
(continued...)

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1  While § 362(a) provides for the automatic stay as a general matter,

2  § 108(b) provides that when applicable nonbankruptcy law "fixes a

3  period within which the debtor . . . may file any pleading, demand,

4  notice, or proof of claim or loss, cure a default, or perform any

5  other similar act, and such period has not expired before the date

6  of the filing of the petition," then the trustee or debtor-in-

7  possession may only perform such act before the later of the period

8  for performance, or 60 days after the order for relief.

9        In Chapter 13 cases, courts have also looked at the

10  application of 11 U.S.C. § 1322 to determine whether a redemption

11  period can be extended through the Chapter 13 plan.  See Krawczyk

12  v. United States (In re Krawczyk), 201 B.R. 589 (Bankr. N.D. Ga.

13  1996) (concluding that § 1322(c) could not extend the statutory

14  redemption period after the tax sale occurred); Rudolph, 166 B.R.

15  at 444 (only § 108(b), and not § 1322(b), can extend a redemption

16  period); Federal Land Bank of Louisville v. Glenn (In re Glenn),

17  760 F.2d 1428, 1441-42 (6th Cir. 1985) (consolidated case) (holding

18  that a pre-petition sale of a debtor's principal residence

19  terminates the right to cure under § 1322(b), and specifically

20  declining to allow debtors to pay the redemption amount over the

21  life of the unconfirmed plan under § 1322(b)(3)).

22        There is no Ninth Circuit or Ninth Circuit Bankruptcy

23  Appellate Panel decision precisely on point with regard to the

24  facts of the case at bar.  There is, however, a 40-year old case

25

26        [8](...continued)
   erroneous conduct by the IRS in either sale of the Properties.

27  Therefore, there are no grounds to extend the redemption periods
   under § 105 in this case.

28

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

from the Ninth Circuit addressing an analogous situation under the
Bankruptcy Act. In a Chapter X case, the Ninth Circuit addressed
whether Arizona's 6-month statutory redemption period following a
foreclosure sale could be stayed under the stay provisions in
§§ 116(4) and 148 of the Bankruptcy Act, or whether the redemption
period could be extended only up to 60 days under § 11(e) of the
Bankruptcy Act. Hamblen v. Federal Savings and Loan Ins. Corp. (In
re Thomas J. Grosso Investment, Inc.), 457 F.2d 168 (9th Cir.
1972). The Ninth Circuit concluded that § 11(e) -- which was the
predecessor to 11 U.S.C. § 108(b) -- was inconsistent with Chapter
X of the Bankruptcy Act to the extent that § 11(e) would operate to
limit the stays provided by §§ 116 and 148, and held that § 11(e)
did not limit limit such stays. Id. at 172-73. The court in
Hamblen reached this conclusion largely because, in its view,
§ 11(e) did not apply in a reorganization case. Id. at 173.

The decision in Hamblen is no longer viable, for several
reasons. Under 11 U.S.C. § 103(a), Chapter 1 of the Bankruptcy
Code, including § 108(b), expressly applies to a case under Chapter
13. See In re Petersen, 42 B.R. 39, 41 (Bankr. D. Ore. 1984)
(declining to follow Hamblen on grounds that § 103 of the
Bankruptcy Code expressly makes § 108 applicable to reorganization
cases). The decision in Hamblen is also contrary to the majority
of decisions issued after § 108(b) sprung into being. In Farmer,
81 B.R. at 859-60, the Bankruptcy Court for the Eastern District of
Pennsylvania identified the majority position to be that § 108(b)
extends a debtor's redemptive rights for up to 60 days after the
filing of a bankruptcy petition. The Farmer court explained that
allowing § 362(a) to extend the redemption period beyond the 60-day

period in § 108(b) would render § 108(b) a nullity or superfluous, stating: "If Congress had intended that § 362(a) would operate as a stay of redemption periods, it would not have provided specific provisions extending redemption periods." Id. at 861 (emphasis in original). The Farmer court relied on the Eighth Circuit's decision in Johnson, 719 F.2d at 277-78, and explained that § 362 was designed to codify the former Bankruptcy Act and Rules, pursuant to which courts had determined that the automatic stay did not toll the redemption period. Farmer, 81 B.R. at 861 n.8. The applicability of § 108(b), rather than § 362(a), to statutory redemption periods is also espoused by two leading treatises and several cases. 4 Collier on Bankruptcy, ¶ 541.04[2] (16th ed. 2012); Norton Bankruptcy Law and Practice 3d, § 61:5 at 61-20 (3d ed. 2012); In re Liddle, 75 B.R. 41, 43-44 (Bankr. D. Mont. 1987); Glenn, 760 F.2d at 1438-40; Tynan v. Goldberg (In re Tynan), 773 F.2d 177, 179-80 (7th Cir. 1985); Petersen, 42 B.R. at 41-42.

Significantly, two Ninth Circuit Bankruptcy Appellate Panel decisions ignored the decision in Hamblen when considering a debtor's right to cure an unpaid mortgage under Chapter 13.[9] In one case, the panel considered whether § 108(b) or § 1322 governed the length of time for debtors to cure a default on a contract for a deed on the debtors' principal residence, and determined that the more specific provisions of § 1322 applied under the facts of that

---

[9] In a bankruptcy appeal, a district court in Oregon also ignored Hamblen in addressing whether § 1322(b) or § 108(b) affected a right of redemption, concluding that "Section 108(b) is the only extension of time available to debtors." Rudolph, 166 B.R. at 1994.

case. <u>In re Frazer</u>, 377 B.R. 621 (B.A.P. 9th Cir. 2007). In the other case, the panel held that the cure contemplated in § 1322(b)(5) (<u>i.e.</u>, to cure a default within a reasonable time) was not available to a debtor when there was a pre-petition foreclosure sale, even though the right of redemption under an Oregon statute had not yet expired. <u>Braker v. State of Ore., Dept. of Veterans' Affairs (In re Braker)</u>, 125 B.R. 798 (B.A.P. 9th Cir. 1991). Both appellate panels had the opportunity to apply <u>Hamblen</u>, but did not.

Therefore, the Court finds that <u>Hamblen</u> lacks any vitality, notwithstanding the fact that one bankruptcy court within the Ninth Circuit relied on <u>Hamblen</u> 30 years ago to conclude that § 362(a), rather than § 108(b), operates to toll a state statutory right of redemption. <u>See Sapphire Investments v. Stewart Title and Trust of Tucson (In re Sapphire Investments)</u>, 19 B.R. 492, 495 (Bankr. Ariz. 1982). This Court concludes that the specific provisions of § 108(b), made applicable to Chapter 13 cases under § 103(a), are dispositive. If the Court were to rule that § 362(a) extended the statutory redemption period throughout the bankruptcy case, then such ruling would have the effect of rendering § 108(b) a nullity. Established principles of statutory construction dictate that this Court give effect to the more specific statute. <u>See United States v. Navarro</u>, 160 F.3d 1254, 1256-57 (9th Cir. 1998).

Rugroden argues that under 11 U.S.C. § 1322(b), Rugroden had a right to cure the tax deficiency in the Chapter 13 plan, therefore the time limitations of § 108(b) do not apply in this case. Rugroden has not specified any particular provision of § 1322(b) which ought to apply, but Rugroden has made passing references to

Case: 11-53414   Doc# 71   Filed: 09/25/12   Entered: 09/25/12 15:49:41   Page 13 of 21

§§ 1322(b)(2), (3), and (5). Under these three subsections, a Chapter 13 plan may:

> (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;
>
> (3) provide for the curing or waiving of any default; . . .
>
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

Rugroden's argument is supported in part -- at least in theory -- by In re Frazer, 377 B.R. 621 (B.A.P. 9th Cir. 2007), which addressed the relationship between § 108(b) and § 1322(b). In Frazer, the debtors argued that the time limits of § 108(b) did not apply and that the debtors had a right to cure their contractual default under § 1322(c)(1) until a foreclosure sale -- or the functional equivalent of a foreclosure sale -- was held. 377 B.R. at 627. The court concluded that § 1322(c)(1) was not available to the debtors because Montana law provided for no foreclosure sale or any equivalent. Id. at 630. However, the court then addressed the applicability of §§ 1322(b)(3) & (5), which allow a debtor to cure a default within a reasonable time, and concluded that the cure provisions in § 1322 "trump" the general cure provision of § 108(b). Id. at 630-31. This was because § 1322 was a specific cure provision applicable to Chapter 13 cases, and § 108(b) was a provision of general applicability. Id. at 631.

The question, then, is whether Rugroden seeks, in his Chapter 13 plan, to cure a "default" under § 1322(b). Black's Law Dictionary defines "default" as "The omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due." This case is not like <u>Frazer</u>, in which the debtors defaulted under a contract. In <u>Frazer</u>, the act of curing the default would consist of making payments under the contract. Here, the IRS's lien came into being after Rugroden failed to pay income taxes. The default, therefore, consists of Rugroden's failure to perform a legal duty to pay taxes. The act of curing such a default would consist of paying the overdue taxes, which falls within the broad dictionary definition of "default."

However, the proposed Chapter 13 plan which Rugroden filed with his bankruptcy petition belies Rugroden's assertion that Rugroden seeks to cure any default on his tax obligations. Under the proposed plan, Rugroden is required to pay $140.00 per month to the Chapter 13 Trustee, who then makes disbursements on nine listed claims. The plan provides for no direct payments to the IRS, which holds a secured claim totaling $563,720.46, as well as an unsecured claim in the amount of $6,000. If the entire $140 monthly payment were credited to the IRS's secured claim, it would take more than 4,026 months (or 335 years) to pay the secured claim in full. The plan does not provide for any payments to Harvey to redeem either of the Properties,[10] and Rugroden has not proposed an amended plan

_____

[10] The IRS contends that under the plan, it would take 47.5 years for Rugroden to pay Harvey for the Properties if the $140 monthly payment were credited to the redemption amount of $174,600. This calculation may be incorrect, because payment of $140 per

(continued...)

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1 which would demonstrate that Rugroden intends to avail himself of

2 any subsection of § 1322(b).[11]

3     The applicability of § 1322(b)(5) is also questionable. At

4 least one court has stated in <u>dicta</u> that the cure provisions of

5 § 1322(b)(5) require a contractual relationship. <u>In re Braker</u>, 125

6 B.R. 798, 800-01 (B.A.P. 9th Cir. 1991); <u>but see</u> <u>Rudolph</u>, 166 B.R.

7 at 442-43 (declining to follow <u>Braker</u> in the context of a property

8 tax default). Here, the relationship between Rugroden and the IRS

9 is not contractual but instead arose as a matter of law, due to

10 Rugroden's statutory obligation to pay federal income taxes.

11     More significantly, the <u>Braker</u> court also concluded that

12 § 1322(b) could not apply when there was a pre-petition foreclosure

13 sale. <u>Braker</u>, 125 B.R. at 801; <u>see also</u> <u>State of Oregon v. Hurt</u>

14 <u>(In re Hurt)</u>, 158 B.R. 154, 161 (B.A.P. 9th Cir. 1993) (the right

15 to cure under § 1322(b)(5) is extinguished at the time of a

16 foreclosure sale, before expiration of the redemption period);

17 <u>Glenn</u>, 760 F.2d at 1442 (holding that once property is sold at a

18

19     [10](...continued)
month over a period of 47.5 years totals only $79,800.

20     [11] The plan also states: "The plan shall be funded from the
21 proceeds of litigation. Debtor is authorized to sell real property
free and clear of any tax liens, provided that the terms of any
22 proposed sale shall be subject to court approval." In opposition
to the Motion for Relief from Stay, addressed <u>infra</u>, Rugroden's
23 papers suggest that such litigation, which is pending in state
court, may be worth $1.3 million. This litigation is listed as
24 personal property on Schedule B and is identified as "Rugroden vs.
Kelsey, action for fraud and quiet title." However, no litigation
25 is specified in the Chapter 13 plan, and apart from a line-item on
Schedule B, the record is devoid of any competent evidence valuing
26 such litigation. Rugroden's supplemental response to the Motion
for Relief from Stay indicates that the litigation is still
27 pending.

28

foreclosure sale, there is no right to cure under § 1322(b)).
Although the instant case does not involve a foreclosure, there was
a pre-petition tax sale of both Properties, and the time for
Rugroden to cure his tax default under § 1322(b) expired when the
Properties were sold.

Under these circumstances, the Court cannot conclude that
§ 1322(b) extended the statutory redemption period for either of
the Properties. Therefore, the Court is left with 11 U.S.C.
§ 108(b).

In this case, there were two redemption periods. The
redemption period for Carnelian Bay ran from October 21, 2010
through April 19, 2011, and the redemption period for Groveland ran
from November 30, 2010 through May 29, 2011. Under § 108(b), the
filing of the bankruptcy petition on April 12, 2011, resulted in an
extension of both redemption periods to June 11, 2011. On June 11,
2011, Rugroden's redemption rights expired. Consequently, the
redemption rights ceased to exist and passed out of the bankruptcy
estate.

There were no steps Rugroden could have taken after June 11,
2011 -- 60 days after the filing of the bankruptcy petition -- to
buy back either of the Properties and prevent issuance of the
deeds. In fact, § 6338(b) required the Secretary -- _i.e._, the IRS
district director -- to execute the deeds. However, nothing in
§ 6338(b) addresses what should occur upon the filing of a
bankruptcy petition, and whether the IRS was first required to
obtain relief from the stay before issuing the deeds.

The IRS argues that execution of the deeds was purely
ministerial and therefore did not violate the automatic stay.

1  Citing <u>In re Gonzalez</u>, 456 B.R. 429 (Bankr. C.D. Cal. 2011);

2  Rugroden argues that issuance of the deeds was not ministerial.

3      The automatic stay does not bar purely ministerial acts.  <u>See</u>

4  4 Collier on Bankruptcy, ¶ 362.03[3][e] (16th ed. 2012); <u>see also</u>

5  <u>Soares v. Brockton Credit Union (In re Soares)</u>, 107 F.3d 969, 973-

6  74 (1st Cir. 1997).  A ministerial act is one which "involves

7  obedience to instructions or laws instead of discretion, judgment,

8  or skill[.]"  <u>See</u> <u>Black's Law Dictionary</u> (9th ed. 2009); <u>see also</u> 4

9  Collier on Bankruptcy, ¶ 362.03[3][e] (16th ed. 2012).

10 Distinguishing between a ministerial act and a judgment call is not

11 always a simple task.  <u>See</u> <u>Wellman v. Writers Guild of America,</u>

12 <u>West, Inc.</u>, 146 F.3d 666, 670 (9th Cir. 1998).  Ministerial acts

13 and judgment calls fall on opposite ends of a spectrum of possible

14 actions, and distinguising one from the other requires an analysis

15 regarding the degree of discretion required in undertaking the

16 action.  <u>Id.</u> at 670-71.  When a statute clearly gives an official

17 no choice but to act, then the act is ministerial.  <u>See</u> <u>Miguel v.</u>

18 <u>McCarl</u>, 291 U.S. 442, 451-52 (1934) ("If the law direct him to

19 perform an act in regard to which no discretion is committed to

20 him, and which, upon the facts existing, he is bound to perform,

21 then that act is ministerial, although depending upon a statute

22 which requires, in some degree, a construction of its language by

23 the officer.").

24     The majority view is that the issuance or recording of a deed

25 after expiration of a redemption period is ministerial.  In <u>Farmer</u>,

26 the bankruptcy court concluded that the recording of deeds at the

27 end of the statutory redemption period was not an affirmative act

28 which could violate the stay, but instead was a ministerial act

required by the Internal Revenue Code. 81 B.R. at 861. Following _Farmer_, another bankruptcy court reached the same conclusion. _In re Cooke_, 127 B.R. 784, 786-87 (Bankr. W.D.N.C. 1991). In an analogous situation involving a pre-petition foreclosure sale, the district court in _In re Martinson_, 26 B.R. 648, 654-55 (D.N.D. 1983), reversed in part on other grounds, 731 F.2d 543 (1984), ruled that the execution of a sheriff's deed after expiration of a redemption period was a ministerial act which did not violate the automatic stay.

Rugroden urges the Court to consider the bankruptcy court's ruling in _Gonzalez_, 456 B.R. at 434, in which the court stated: "The execution, delivery and acceptance of a properly-drawn deed to real property are no mere formalities or ministerial acts. Rather, they are the essential acts by which ownership of, and title to, real property are transferred from one person to another." However, the _Gonzalez_ court did not consider the definition of "ministerial" or undertake any particular analysis of the degree of discretion required to execute a deed.

The plain language of 26 U.S.C. § 6338(b) required the Secretary to execute the deeds in favor of Harvey and provided no discretion to do otherwise. Under the undisputed facts of this case, after the redemption periods -- as extended by § 108(b) -- expired on June 11, 2011, the IRS district director was required under the unequivocal language of § 6338(b) and 26 C.F.R. § 301.6338-1(b) to execute deeds in favor of Harvey for both Properties. The act of executing the deeds was ministerial and therefore did not violate the automatic stay.

**IV. Conclusion**

For the foregoing reasons, the Motion for Sanctions is denied. The Motion for Relief from Stay is denied, as moot, since this Court has ruled that there was no violation of the automatic stay.

IT IS SO ORDERED.

Dated: September 25, 2012

_____
ARTHUR S. WEISSBRODT
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

Court Service List

Maurice Eugene Rugroden
P.O. Box 1418
Los Gatos, CA 95031

Stanley A. Zlotoff
Law Offices of Stanley A. Zlotoff
300 S 1st St. #215
San Jose, CA 95113

John W. Strate
Office of Chief Counsel
55 S Market St. #505
San Jose, CA 95113

Peter J. Leeson, VI
600 S. Lake Ave. #401
Pasadena, CA 90016

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California